Good morning. If it pleases the Court, my name is Jim Honebaum. I represent Jeffrey James Flaulkner, who is a prisoner under the jurisdiction of the Arizona Department of Corrections. Mr. Flaulkner appeals from a denial of his motion, which sought permission to file a motion for reconsideration. The motion that he sought to challenge was an order vacating and dismissing a consent decree, which at this point in time is 33 years old. Counsel, I don't understand how the plaintiff, how the court below had jurisdiction to begin with, your client was not a party to the consent decree. It was not a class action. And he was not a party. So how could he come in and file a motion for reconsideration and have it heard by the court? Well, first of all, Your Honor, there was a class certification. The class was certified conditionally. I cannot tell the court whether it is at what point it may have been a class action or not. Well, counsel, I mean, I have you know, that's actually a really odd part of this case. I did look through the docket sheet, and the court said if you give me new representative plaintiffs, you can have a class. But as far as I can tell, that never happened. And if no representatives came forward, how could it have become a class action? My understanding is that you are correct. But the point is that the, in the order the district court judge pointed out the fact that it was, that the class was not certified, and in fact it was. To go back to your question. Well, if it was certified, conditioned upon naming a new representative, and that condition was never fulfilled, then it never would have become a class action. That is correct, Your Honor. Okay. So if it was not a class action, your client was not a party to the consent decree because there was no class to be a member of, and he was not a named party. So how can, if that is correct, how can an outsider, even if interested in the outcome in some way, come in, a non-party, come into the district court and say, I'd like you to reconsider your ruling in a case to which I'm not a party? Well, Your Honor, the he is a third-party beneficiary to the consent decree. This Court held that back in 1995 or some, at some point. And the issue, of course, is that the argument is that there's no longer a consent decree because it was vacated. But his argument, the argument that he wants to make is that it was inappropriate to vacate the consent decree. So... Well, then he could have moved to intervene, but he, in a timely way, as a number of other people did, there were a lot of motions to intervene at various times by other people that were way back when. But a third-party beneficiary who does not I don't understand how they can come in and ask to reconsider or revisit an order. The record below contains nothing about whether his, whether his motion was timely or not. It was not raised below. The judge did not consider it. There is simply no record of why it took him that time. So there really is no, there's no record to support whether it was timely or whether it was not timely, Your Honor. Can you help me? You're appearing here by virtue of our pro bono appointment program. Yes, sir. Yes, ma'am. And we appreciate that. Can you help me a little bit as to, as you have had an opportunity to review this, as to what it is that your client really is after here? My client is after an opportunity to argue that the consent decree should be maintained, that the order which vacated and dismissed the consent decree was there. He simply is looking for a chance to argue that the consent decree should continue. Now, how is he, is he a, he's a prisoner now? He is a prisoner at this time, yes. How is he aggrieved by virtue of the fact that the consent decree is no longer in effect? Well, he's, he is aggrieved in the fact that he claims in the, in his motion that the holiday package provision of the consent decree was not being followed. And as a third-party beneficiary to the consent decree, he has the, he has the ability to come before the court and challenge that. Now, how did that work? Do you understand that during the time that the decree was in effect, what, what, what happened with respect to holiday packages? Yes, Your Honor. It was originally in 1973 put into the consent decree, even though there was no request in the, in the complaint for that. That was negotiated between the counsel for the prisoners and the counsel for the Arizona Department of Corrections. The Department of Corrections sought to have that provision removed. The, the case ---- What did the provision do? What did it do for the prisoners? Okay. The, the provision as it was originally designed allowed the prisoners to receive three 25-pound packages during a defined holiday period, which I believe ran from December the 1st to December, sometime in December. They could receive three holiday packages. In the late 1990s, 1997, I believe, after the Arizona Department of Corrections had sought to completely remove that provision, it was not removed. It was changed because of the difficulty that the Department of Corrections had in inspecting all of these big packages coming in. It was changed so that the prisoners would have $100 extra, I believe it was a week or a month, to buy products in the prison store. And the agreement was that the prison would stock a sufficient number of holiday type items and specialty items so that the that provision remains in the consent decree, or it remained in it at least until the time it was vacated. This may be outside the record, but what, what is the practice now that the consent decree has been terminated? My understanding is that, and like you say, this is not in the record, but my informal understanding is that the prison continues to comply with that consent, with that part of the consent decree, and continues to provide the inmates with extra money, the dispute being that they're not, they're not putting enough in the store. And your, but your client now wants what? To get the packages back or comply with the extra money? No, Your Honor. He, he seeks to challenge the order that vacated the consent decree, because there's much more to the consent decree than the packages. It, it includes constitutional issues such as what type of erotica the prisoners can receive, what type of mail they can send, and to whom, what type of mail they may receive, and from whom. All of those issues and many more are, are contained in the consent decree that was vacated. And so he's concerned with all of that? He's concerned, he, he's concerned with all of that, Your Honor. His, his petition did not specifically mention that, but he sought permission to file a motion for reconsideration of the denial of the, of the vacating of the consent decree. Is there anything stopping him from bringing his own action to get all of these benefits? I'm not, I'm not certain that there is, Your Honor. But the point is that there is, there, there was a consent decree that had been agreed upon and litigated vigorously during the 1990s. In fact, during the 1990s, the case came before this Court at least four times and resulted in a, in three published decisions. So is your position that your client, that this whole business of having a consent decree was in order to benefit all the inmates of the prison, even though they were not parties? Yes. Even though they were not parties to the --? Yes, Your Honor. In the original Hook v. the Department of Corrections, this Court held that they were intended beneficiaries of the consent decree. Right. Does that answer your question? Okay. The reason that the order that the judge entered denying Mr. Faulkner's motion is that he was misinformed of the number of prisoners who were plaintiffs in the action. He was informed that there were 23 and that only one remained incarcerated, and he was served. He did not respond. So the Court determined that he and the prisoners had, in fact, consented to the vacating of the consent decree. And the fact is that there were 265 other plaintiffs, none of whom received notice and opportunity to be heard. So the order was based upon misinformation, and it was error to enter the order on that basis, Your Honor. Okay. Thank you. Your time has expired. Thank you. May it please the Court, my name is Daniel P. Schack. I'm an assistant Arizona Attorney General here on behalf of the State of Arizona. I'd like to address Judge Schroeder's question as to what it is that Faulkner really wants. Today is the first time we have ever heard that Faulkner was interested in anything but the holiday goodies. If you look at the brief that he filed before pro bono counsel was appointed, he asks that the consent decree be reinstated to ensure that all ADOC prisoners, regardless of status, are entitled to the full $112 limit for four weeks during the holiday period and to require the ADC, the Department of Corrections, to make good-faith efforts to acquire specialty items in the spirit of the original consent decree. He has never once addressed any of the constitutional issues that were the genesis of this case. As we pointed out in our brief, the goodies was unfortunately and fortuitously thrown in and caused some of the problems that we have here. The most salient feature about this appeal is that Mr. Faulkner's attempts to his motion in this appeal are that he's doomed to failure. He has an insurmountable obstacle in the form of the Prison Litigation Reform Act. Why did we reach that? Isn't the sole question before us procedural? If we find that either the district court-like jurisdiction or that it properly denied his motion, that's the end of it on one side. And if we find that the district court should have considered it, doesn't it still go back to the district court for it to look at that? As to the second question, I respectfully disagree, Your Honor. Mr. Faulkner's motion in one sentence asked for permission to file a brief, but his motion addressed the merits of the vacation of the consent decree. This was and he titled it a 60b3 motion, a 60b3 motion. But that isn't the way the issue is framed on appeal. And aren't we limited to the way it's framed on appeal? It certainly was framed that way in his original brief. And Your Honor can certainly affirm, for reasons that appear in the record, that support the district court's decision. The district court, in granting our motion, not only took note of the fact that the one remaining plaintiff had not responded, but also said that we had established good cause under the PLRA to have the consent decree vacated, and then, in denying Mr. Faulkner's motion, noted that that was what he had done previously. So that certainly is an issue that is before the Court, and it does tell on what is appearing here. And the Court, certain courts generally do not require the taking of a vain and useless act. And to send this thing back would be vain and useless, because Mr. Faulkner can't get past the court's request to pass the Prison Litigation Reform Act. The Holiday Goodies package is, by definition, almost, but certainly by concession from this Court's previous opinions and from tacit concession from Mr. Faulkner and his counsel, is well beyond what any Federal law requires. And the PLRA requires that extra-constitutional perspective relief not be enforced in the future. That is all that Mr. Faulkner is seeking here. He is --. Well, he's trying to get he's trying to resurrect something in the past. That is correct, Your Honor, and that was the other argument. That was one of the other arguments we made, which is that he was a third-party beneficiary, but he had never appeared. He had never moved to enforce anything. Counsel says that they weren't the Department of Corrections wasn't complying, yet he didn't move to intervene to say, hey, look, you have to get my goodies. He's pro se, and we appointed counsel to try to make the best case here. Yes. I understand that, Your Honor. But what I'm saying is that now he's coming in here to resurrect a consent decree that he that didn't exist by the time he took any action. So I thought that was the point, Your Honor. In the prison at the time that the consent decree was in effect? No. It is my understanding that he was born in 1973, so or somewhere 1971. So he would have been about two years old when the consent decree was first entered. He would have been quite precocious, I guess. Yes. But he was he when was the when did the consent decree end? 2004, between 2002 and 2004. He was in prison then? Oh, yes, he was. Yes. The a couple of points. The Mr. Holmbaum says that this is all about the arguments he wants to make. As I pointed out, he's already made the arguments that he wants to make. If you look at his motion to intervene, he has argued on the merits that the that the court erred in setting aside the consent decree because it didn't take into account the contractual nature of consent decrees. Well, we've answered that. The PLRA requires its vacation. So and the whole business about whether anybody got notice is really a red herring and just a bunch of smoke. He he has never argued that he personally was entitled to notice the and and but even if he was, even if he was, he evidently got wind of it. He filed his motion. He wasn't tossed out of court because he was late. He was heard. So he got the process. He got the process that he was due, assuming he was due any process. So there's just nothing here. If there are no further questions, I will concede the rest of my time. Thank you. Okay. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Graber, Duffy